Octavio Cardona-Loya II, SBN 255309
Law Offices of Eric F. Fagan
3130 Bonita Road, Suite 200-B
Chula Vista, CA  91910
Octavio@efaganlaw.com
Phone: 619-656-6656; Fax: 775-898-5471
Attorney for Plaintiff Carlos S. Reyes

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS S. REYES, an individual, | Case No.:  09cv1366 DMS (WMC) |
| Plaintiff, | **Second Amended Complaint For Damages:** |
| v. | 1. **Breach of Written Contract;** |
| | 2. **Violation of Rosenthal Act;** |
| SAXON MORTGAGE SERVICES, INC,  a corporation; COUNTRYWIDE HOME LOANS, INC., a corporation; and DOES 1 through 20 inclusive, | 3. **Invasion of Privacy:Intrusion Into Private Affairs;** |
| | 4. **Violation of TCPA; and** |
| | 5. **Unlawful and Unfair Acts and Practices.** |
| Defendants. | |

## I. INTRODUCTION

1.     Plaintiff became ensnared in a loan of the kind addressed by Congress in enacting emergency legislation to halt the economic down spiral caused by an influx of what Federal Reserve Board Chairman Ben Bernanke terms "preventable foreclosures."[1]

////

---

[1] Ben S. Bernanke, March 4, 2008.  Full text available at www.federalreserve.gov/newsevents/speech/bernanke20080304a.htm

## II. VENUE

2. Venue in this District is proper in that the Plaintiff resides here, Defendants transact business here, and the conduct complained of occurred here.

## III. PARTIES

3. Plaintiff CARLOS S. REYES is, and at all times a relevant individual residing at 1425 Ava St., San Diego, CA 92114 (the "Plaintiff's Home").

4. Defendant **SAXON MORTGAGE SERVICES, INC.** at all times relevant was a corporation doing business in San Diego County, California operating from an address at 4708 MERCANTILE DRIVE NORTH, FORT WORTH, TX 76137.

5. Defendant **COUNTRYWIDE HOME LOANS, INC.** at all times relevant was a corporation doing business in San Diego County, California operating from an address at 4500 PARK GRANADA #11, CALABASAS, CA 91302.

6. **DOE 1** is the present beneficiary of Plaintiff's loan.

7. The true names and capacities, whether individual, corporate (including officers and directors thereof), associates or otherwise of Defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sue these Defendants by such fictitious names. Plaintiff is informed and believes, and alleges that each Defendant designated as a DOE is involved in or is in some manner responsible as a principal, beneficiary, agent, dual agent, co-conspirator, joint venturer, alter ego, third party beneficiary, or otherwise, for the agreements, transactions, events and/or acts hereinafter described, and thereby proximately caused injuries and damages to Plaintiff. Plaintiff requests that when the true names and capacities of these DOE Defendants are ascertained, they may be inserted in all subsequent proceedings, and that this action may proceed against them under their true names.

8. Plaintiff is a "debtor" as defined by the Rosenthal Act, California Civil Code 1788.2(h).

////

SECOND AMENDED COMPLAINT FOR DAMAGES

9. SAXON and COUNTRYWIDE at all times relevant were engaged in the collection of debts from consumers using the mail and telephone.

10. SAXON and COUNTRYWIDE regularly attempt to collect consumer debts alleged to be due to another.

11. SAXON and COUNTRYWIDE are "debt collectors" as defined by the Rosenthal Act, California Civil Code 1788.2(c).

12. The purported debts which SAXON and COUNTRYWIDE attempted to collect from Plaintiff were "consumer debts" as defined by the Rosenthal Act, California Civil Code §1788.2(f).

### IV.  FACTUAL ALLEGATIONS

*Obtaining the Loan*

13. Plaintiff CARLOS S. REYES purchased his home in 2006.

14. Plaintiff has no experience beyond basic financial matters.

15. In June of 2006, Plaintiff took out a loan ("the Loan") secured by his Home by executing a Note and Deed of Trust.

16. At the time of taking out the Loan, Plaintiff was deceived by the lender and the lender's agent as to the true nature and ramifications of the Loan's terms.

*Plaintiff's Efforts to Obtain a Loan Modification*

17. One a date unknown to Plaintiff, DOE 1 became the beneficiary of the Loan.

18. At a date unknown, SAXON began acting as an agent of DOE 1 in servicing the Loan.

19. Defendant COUNTRYWIDE services Plaintiff's second loan.

20. SAXON had represented that it would help homeowners having financial difficulties by modifying loans to benefit such homeowners.

21. To this end, SAXON established and staffed a Loan Modification department.

22. Plaintiff attempted to obtain a modification of the Loan through SAXON, but SAXON would not provide Plaintiff with a loan modification.

23. On or about May 18, 2009 SAXON informed Plaintiff's counsel that Plaintiff "prequalified" for a modification.

24. Three days later, SAXON indicated the modification Plaintiff prequalified for would only last five years.

25. On or about May 21, 2009 an assistant at Plaintiff's counsel's office asked SAXON representative Mary Jane (ID#19154) to provide the prequalification terms in writing to confirm SAXON'S contention that Plaintiff prequalified for a modification.

26. Mary Jane stated that she would mail information regarding the prequalification to the Plaintiff within four to five working days; Plaintiff did not receive such documentation.

27. SAXON did not provide Plaintiff with a modification; it instead chose to pursue foreclosure.

28. On February 12, 2009 upon instructions from SAXON, Regional Trustee Services Corp. recorded a Notice of Default against Plaintiff's home thereby initiating a Trustee's Sale process to foreclose on Plaintiff's home.

### *SAXON'S Failure to Comply With the Home Affordable Modification Program*

29. On March 4, 2009 President Obama signed into law the Making Home Affordable Plan as part of the Emergency Economic Stabilization Act of 2008. It is in two parts: the *Home Affordable Refinance* program and the *Home Affordable Modification* (HAMP) program.

30. On April 13, 2009, SAXON entered into a Servicer Participation Agreement for the *Home Affordable Modification Program* (the "Contract") with Fannie Mae; the latter acted as Financial Agent of the United States. The Contract is attached as Exhibit 1.

31. If a borrower under a loan serviced or owned by SAXON seeks modification, the Contract requires SAXON to first determine eligibility requirements of the borrower and the loan in question.

////
////

32. If the borrower and the loan are eligible, SAXON must then perform a Net Present Value (NPV) Test to compare the value of the money that it would receive if the loan were modified with what the value it could expect from foreclosure.

33. If SAXON can expect a greater return from modifying the loan, the loan is considered NPV positive; SAXON then **must** modify the loan absent fraud.

34. If SAXON is a servicer of the loan (as opposed to being the owner of the loan), SAXON **must** modify the loan unless the contractual agreement it has with the actual Holder of the loan prohibits modification. In that case, SAXON is required to use reasonable efforts to obtain waivers or approval of a modification from the Holder.

35. The modification must result in a monthly payment that includes principal, interest, property taxes and insurance, and any other pertinent fees such as Homeowner Association Dues. The resultant payment cannot exceed 31% of the borrower's gross income. See Exhibit 2, Home Affordable Modification Program Guidelines, March 4, 2009 and Exhibit 3, U.S. Department of the Treasury Making Home Affordable Summary of Guidelines.

36. Plaintiff attempted to obtain a modification of the Loan through SAXON; both Plaintiff and his loan qualify for the HAMP.

37. Plaintiff's gross monthly income is approximately $5,709; a 31% monthly payment would be $1,770; the fair market value of Plaintiff's Home is approximately $251,500.

38. Of that, $900 is for taxes and insurance, leaving a monthly payment of $870 for principal and interest.

39. The Net Present Value of the principal and interest portion of the payment spread over 40 years is $416.25.

40. The NPV tests positive and thus SAXON was obligated to modify Plaintiff's loan.

41. SAXON refused to offer such a modification.

42. SAXON has failed to comply with the conditions of the Contract.

43.     Upon instruction by SAXON, Regional Trustee has scheduled a trustees' sale of Plaintiff's home to take place on June 25, 2009 irrespective of the Temporary Restraining Order granted by the Court on May 28, 2009.

*Harassment of Plaintiff by SAXON MORTGAGE and COUNTRYWIDE*

44.     Approximately late October 2008, SAXON and COUNTRYWIDE representatives began harassing Plaintiff by making continual phone calls to Plaintiff in an attempt to collect payments on the loan.

45.     SAXON'S phone calls did not cease until March when Plaintiff informed SAXON he retained counsel.

46.     Plaintiff told the COUNTRYWIDE representatives that Plaintiff was represented by an attorney and provided the name and phone number of his attorney; nevertheless, COUNTRYWIDE representatives continued to contact and harass Plaintiff.

47.     Both SAXON and COUNTRYWIDE contacted Plaintiff, five days a week at his home, cell, and work phone numbers, generally multiple times a day.

48.     SAXON and COUNTRYWIDE each contacted Plaintiff at his work multiple times a week.

49.     SAXON frequently made calls to Plaintiff's cell phone using an automatic telephone dialing system (including an automated dialing machine, dialer, and auto-dialer) and an artificial or prerecorded voice ("autodialer").

50.     When Plaintiff did not answer the cell phone, SAXON would leave a prerecorded message on the cell phone voice mail with a similar message that the call was from a debt collector and a number for him to call back.

51.     When Plaintiff returned the calls, he could not make contact with a live person but reached a recording.

52.     The excessive phone calls caused Plaintiff to lose sleep and take over-the-counter medication for tension and headaches.

53.     As a result of the acts of the defendants described above, Plaintiff has suffered damages in an amount to be proven at trial.

## V. FIRST CAUSE OF ACTION

**(Breach of Written Contract Against SAXON and DOES 1 through 10)**

54. Plaintiff repeats, realleges, and incorporates by reference all the foregoing paragraphs.

55. Plaintiff is a Third Party Beneficiary to the Contract; SAXON and Fannie Mae intended Plaintiff to benefit under the Contract.

56. SAXON unjustifiably and inexcusably breached the Contract by failing to perform its obligations thereunder as described above.

57. SAXON'S breach of the Contract will result in the loss of Plaintiff's Home.

58. Pursuant to Civil Code Section 1559, Plaintiff may enforce the Contract's provisions.

59. Plaintiff seeks damages according to proof and reserves his rights to seek equitable remedies to prevent the sale of his home.

## VI. SECOND CAUSE OF ACTION

**(Violation of Rosenthal Act Against SAXON, COUNTRYWIDE, and Does 1 through 20)**

60. Plaintiff repeats, realleges, and incorporates by reference all the foregoing paragraphs.

61. Defendants violated the Rosenthal Act, by including but not limited to, the following:

  (a) The Defendants violated Civil Code §1788.11(d) by causing a telephone to ring repeatedly or continuously to annoy the person called;

  (b) The Defendants violated Civil Code §1788.11(e) by communicating with the Plaintiff with such frequency as to be unreasonable and to constitute an harassment to the Plaintiff under the circumstances;

////

(c) Defendant COUNTRYWIDE violated 15 U.S.C. § 1692b(6) by communicating with a person other than the Plaintiff's attorney after COUNTRYWIDE knew the Plaintiff was represented by an attorney, thus resulting in a violation of Civil Code §1788.17;

62. Defendants' acts as described above were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

63. As a proximate result of Defendants' violations enumerated above, Plaintiff has been damaged in amounts which are subject to proof.

64. Defendants' violations of the Rosenthal Act were willful and knowing. Defendants are therefore liable to Plaintiff for Plaintiff's actual damages, statutory damages, and attorney's fees and costs pursuant to California Civil Code §1788.30.

## VII. THIRD CAUSE OF ACTION
### (Invasion of Privacy: Intrusion Into Private Affairs Against SAXON, COUNTRYWIDE, and Does 1 through 20)

65. Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

66. Plaintiff had a reasonable expectation of privacy in his solitude, seclusion, and private concerns and affairs.

67. Defendants willfully and intentionally intruded into Plaintiff's solitude, seclusion and private affairs by repeatedly and unlawfully attempting to collect a debt.

68. Defendants intrusions would be highly offensive to a reasonable person and did in fact offend Plaintiff.

69. As a result of such invasions of privacy, Plaintiff was harmed and caused great mental and physical pain.

70. Defendants acted with oppression or malice and Defendants are therefore liable to Plaintiff for damages in an amount to be proven at trial and for punitive damages.
////

## VIII.  FOURTH CAUSE OF ACTION

**(Violation of TCPA against SAXON MORTGAGE and Does 1 through 20)**

71. Plaintiff repeats and realleges and incorporates by reference all of the foregoing paragraphs.

72. Defendant SAXON improperly invaded the privacy rights of Plaintiff and violated the TCPA by the above-described actions. Defendant's violations include, but are not limited to, the following:

    a) By repeatedly making calls using an automatic telephone dialing system, and by transmitting prerecorded or artificial messages, to the Plaintiff's cell phones using an automated telephone dialing system without Plaintiff's express consent and to the expense of Plaintiff in violation of 47 U.S.C. §227(b)(1)(A)(iii).

73. As a result of the above violations of the TCPA, Defendant is liable to the Plaintiff for declaratory judgment that Defendants' conduct violated the TCPA, Plaintiff's actual damages, statutory damages of $500 for each call, and up to three times statutory damages for willful and knowing violations pursuant to 47 U.S.C. §227(b)(3).

## IX.  FIFTH CAUSE OF ACTION

**(Unlawful and Unfair Acts and Practices Against All Defendants)**

74. Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

75. Defendants' violations and tortious conduct -

(a) SAXON'S breach of the Contract;

(b) SAXON'S and COUNTRYWIDE'S violation of Civil Code §1788 et seq.,

(c) SAXON'S and COUNTRYWIDE'S intrusion into Plaintiff's privacy,

(d) SAXON'S violation of the TCPA, and

- are unlawful and unfair business practices or acts under the Unfair Competition Law of Business and Professions Code §17200, *et seq.*

76. Plaintiff will seek to enjoin the foreclosure of their home. Should Defendants conduct a trustee's sale of Plaintiff's home, Plaintiff will seek cancellation of the foreclosure sale and restitution of his home, including lost monies, attorney fees and any civil penalties and other relief that the court deems appropriate.

## X.  REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment against the Defendants and each of them for the following:

As against SAXON and DOES 1-20:

1. Statutory damages of $500 per telephone call and, additional $1,000 per call, pursuant to 47 U.S.C. 227(b)(3)(B);

And against SAXON, COUNTRYWIDE, and DOES 1-20:

2. Statutory damages, attorney's fees and costs pursuant to California Civil Code §1788.30;
3. Actual damages;
4. Punitive damages; and
5. For such other and further relief as the Court may deem just and proper.

Dated: November 12, 2009               LAW OFFICES OF ERIC F. FAGAN


                                        /s/ Octavio Cardona-Loya II            .
                                       Octavio Cardona-Loya II,
                                       Attorney for Plaintiff